UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTHONY FLAAEN,<br><br>           Plaintiff,<br><br>   v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY, INC.,<br><br>           Defendant. | CASE NO. C15-5899BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Anthony R. Flaaen's ("Flaaen") motion for partial summary judgment (Dkt. 16). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On December 10, 2015, Flaaen filed a complaint for long-term disability benefits against Defendants McLane Company, Inc. ("McLane"), and Principal Life Insurance

Company, Inc. ("Principal").  Dkt. 1.  Flaaen's sole claim is wrongful denial of benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").  *Id*.  On February 1, 2016, Flaaen dismissed McLane.  Dkt. 6.

On June 22, 2016, Flaaen filed a motion for partial summary judgment arguing that the applicable long-term disability plan's ("LTD") discretionary clause is invalid and unenforceable as a matter of law.  Dkt. 16.  On July 25, 2016, Principal responded.  Dkt. 17.  On July 29, 2016, Flaaen replied.  Dkt. 18.

On September 19, 2016, the Court requested additional briefing on Washington's prohibition of discretionary clauses and ERISA law on the governing documents.  Dkt. 21.  On September 30, 2016, the parties submitted supplemental responses.  Dkts. 22, 23.  On October 7, 2016, the parties submitted supplemental replies.  Dkts. 24, 25.

## II. FACTUAL BACKGROUND

On June 12, 1989, McLane hired Flaaen as a truck driver in Tacoma, Washington.  At all times relevant to this matter, Flaaen resided in Tacoma, Washington.  Dkt. 16-1, Declaration of Chris Roy, ¶ 6.

On August 31, 2005, McLane applied for a group LTD plan with Principal.  *Id*., Exh. B.  On January 1, 2006, Principal issued a LTD plan effective that day.  *Id*., Exh. A ("Plan").  Relevant to this matter, the Plan contains a provision that governs certificates issued to the insureds that provides as follows:

> The Principal will give the Policyholder Individual Certificates for delivery to insured Members. The delivery of such Certificates will be in either paper or electronic format. The individual Certificates will be evidence of insurance and will describe the basic features of the benefit plan. They will not be considered a part of this Group Policy.

*Id.*, Part II, Section A, Article 7.  The Plan also contains a provision entitled "Policy Interpretation," which provides as follows:

> The Principal has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of The Principal in such matters shall be as between The Principal and persons covered by this Group Policy, subject to the Claims Procedures in PART IV, Section Q of this Group Policy.

*Id.*, Section A, Article 9.

In addition to the Plan, Principal created a document entitled "Group Booklet Certificate." *Id.*, Exh. C ("Booklet-Certificate").  The third page of the Booklet-Certificate provides as follows:

> Summary Plan Description for Purposes of Employee Retirement Income Security Act (ERISA):
> This Booklet-Certificate (including any supplement) may be utilized in part in meeting the Summary Plan Description requirements under ERISA for insured teammates (or those listed on the front cover) of the Policyholder who are eligible for Group Long Term Disability insurance.

*Id.* at 3.  It also states that "[t]he insurance provided in this booklet is subject to the laws of TEXAS." *Id.* at 5.  "Members' rights and benefits are determined by the provisions of the Group Policy. This booklet briefly describes those rights and benefits." *Id.* at 6.  "This summary provides only highlights of the Group Policy. The entire Group Policy determines all rights, benefits, exclusions and limitations of the insurance described above." *Id.* at 9.

The record does not accurately reflect when or how Flaaen qualified for benefits under the Plan.  Flaaen alleges that he applied for benefits on April 10, 2007, Dkt. 1, ¶

ORDER - 3

5.1, yet he asserts in his brief that "[a]round January 1, 2016, [he] applied to participate in the Plan," Dkt. 16 at 3.  Flaaen alleges that on December 24, 2014, Principal denied him benefits under the Plan.  Dkt. 1, ¶ 5.3.  After two appeals, Principal upheld their denial on December 7, 2015.  *Id*., ¶¶ 5.4–5.7.  For the purposes of this motion, the Court will assume that it is undisputed that Flaaen was eligible for benefits under the Plan and that the parties are not seeking an advisory opinion.

### III. DISCUSSION

**A.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In this case, the facts are undisputed and the parties seek only (1) a determination whether the Plan is governed by the laws of Texas and (2) a determination whether the Policy Interpretation clause is valid and enforceable in Washington.

**B.     Plan Documents**

An ERISA fiduciary must distribute benefits "in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D).  "The Supreme Court has specifically excluded the statutorily mandated summary plan description, listed in § 1024(b)(4), as a source of the plan's governing terms."  *Becker v. Williams*, 777 F.3d 1035, 1039 n.3 (9th Cir. 2015).  "[O]nly those [documents] that provide information as to 'where [the participant] stands with respect to the plan,' such as [a summary plan

description] or trust agreement might, could qualify as governing documents with which a plan administrator must comply in awarding benefits under § 1104(a)(1)(D)." *Id*.

In this case, the parties dispute whether the Booklet-Certificate is a governing plan document. Although this issue appeared to be a question of first impression because the Booklet-Certificate states that it may serve as a summary plan description, the Booklet-Certificate is not a Plan document according to specific language in the Plan and the Booklet-Certificate. For example, the Policy provides as follows:

> The Principal will give the Policyholder Individual Certificates for delivery to insured Members. The delivery of such Certificates will be in either paper or electronic format. The individual Certificates will be evidence of insurance and will describe the basic features of the benefit plan. They will not be considered a part of this Group Policy.

Plan, Part II, Section A, Article 7. Principal concedes that the "Booklet-Certificates were provided to McLane Company, Inc. for distribution to all of its eligible employees . . . ." Dkt. 25 at 2. Thus, under the unambiguous language of the Plan, the Booklet-Certificates "will not be considered a part of this Group Policy." Plan, Part II, Section A, Article 7. Moreover, the Booklet-Certificate provides that "[m]embers' rights and benefits are determined by the provisions of the Group Policy. This booklet briefly describes those rights and benefits." Booklet-Certificate at 6. According to the language of both the Plan and the Booklet-Certificate, the Plan controls and the Booklet-Certificate was not intended to add provisions to the Plan. Therefore, the Court grants Flaaen's motion on this issue.

Principal advances numerous contrary arguments, but they all revolve around conflicting provisions of the documents. For example, Principal argues that the Plan's

integration clause incorporates the Booklet-Certificate into the Plan. Dkt. 23 at 6–7. However, under either Washington or Texas law, if an ambiguity existed, it must be construed against the drafter. *See Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 172 (2005) ("Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured."); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 860 (Tex.2000) (rule construing contract against its drafter applies when contract ambiguous). Because the Plan itself states that the Booklet-Certificates is not a part of the Plan, the choice of law provision in the Booklet-Certificates is not enforceable to determine benefits under the Plan.

**C.   Washington's Prohibition of Discretionary Clauses**

Although the Court has resolved the federal question regarding the scope of the Plan, the question remains whether the discretionary clause in the Plan is valid and enforceable in Washington. The parties do not dispute that discretionary clauses are prohibited in Washington. WAC § 284-96-012 (2009). The parties, however, do dispute whether this prohibition applies to the Plan. Principal argues that Washington insurance law applies only to contracts issued and delivered in Washington and, because the Plan was negotiated, issued, and delivered in Texas, the Plan's discretionary clause is valid and enforceable in Washington. Dkt. 17 at 8–9. Flaaen counters that the scope of Washington's insurance regulations includes policies that affect Washington residents. Dkt. 18 at 6. Flaaen's argument has merit because Washington's insurance code provides that "[a]ll insurance and insurance transactions in this state, or affecting subjects located wholly or in part or to be performed within this state, and all persons having to do

therewith are governed by this code." RCW 48.01.020 ("Scope of code."). The parties raise numerous arguments regarding the application of these laws.

First, Principal argues that Washington law "only applies to disability group insurance policies which are subject to approval by the Washington state insurance commissioner." Dkt. 17 at 9 (citing RCW § 48.18.120; RCW § 48.21.010(2)(b)). RCW § 48.18.120 provides in relevant part as follows:

> The commissioner may from time to time, after hearing, promulgate such rules and regulations as he or she deems necessary to establish reasonable minimum standard conditions and terminology for basic benefits to be provided by disability insurance contracts which are subject to chapters 48.20 and 48.21 RCW, for the purpose of expediting his or her approval of such contracts pursuant to this code. No such promulgation shall be inconsistent with standard provisions as required pursuant to RCW 48.18.130, nor contain requirements inconsistent with requirements relative to the same benefit provision as formulated or approved by the National Association of Insurance Commissioners.

RCW § 48.18.120(b). Principal fails to explain how this provision limits the commissioner's rules and regulations to plans provided in Washington. Thus, the argument is without merit.

RCW § 48. 21.010(2)(b) provides in relevant part as follows:

> A group disability insurance coverage may not be offered under this subsection in this state by an insurer under a policy issued in another state unless the commissioner or the insurance commissioner of another state having requirements substantially similar to those contained in this subsection has made a determination that the requirements have been met.

Similarly, this provision provides no support for Principal's position. Although Principal fails to explain its reliance on this provision, the plain reading of this provision provides that insurance coverage in this state may be provided if "the insurance commissioner of

another state having requirements substantially similar to those contained in this subsection has made a determination that the requirements have been met." *Id.* Principal may be asserting that it didn't need to comply with this section because it did not receive approval of either the Washington insurance commissioner or the Texas insurance commissioner. The converse, however, may also be true that Principal was providing insurance to insureds in this state without approval of either commissioner. Regardless, neither of these provisions show that Washington law only applies to contracts of insurance "subject to approval by the Washington state insurance commissioner." Dkt. 17 at 9.

Second, in its supplemental brief, Principal argues that it is "settled law in Washington" that "[r]ights against the insurer under a group policy are generally governed by the law of the state where the master policy was delivered." *Erickson v. Sentry Life Ins. Co.*, 43 Wn. App. 651, 654 (1986). "The rationale behind this rule is that each individual insured should enjoy the same privileges and protection." *Id.* "By applying the law of the state where the master policy was delivered, 'everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from applications of diverse state laws' would be avoided." *Boseman v. Connecticut Gen. Life Ins. Co.*, 301 U.S. 196, 206 (1937). Under *Erickson*, it seems fairly clear that the law of Texas should apply because Principal delivered the master policy to McClane in Texas. Accordingly, applying the law of Texas would ensure that each insured receives the same privileges and protections and would avoid confusion from the application of diverse state laws.

Flaaen, however, argues that *Erickson* does not "apply to this matter." Dkt. 24 at 6. Flaaen contends that *Erickson* was a group life insurance case controlled by state law whereas the instant matter is an "ERISA benefits case . . . controlled by federal law, including federal common law." *Id*. Although Flaaen is partially correct that ERISA cases are controlled by federal law, ERISA contains a "savings clause" such that state laws regulating insurance, banking, and securities are not preempted. 29 U.S.C. § 1144(b)(2)(A). Through this savings clause, federal courts in California have concluded that the California statute prohibiting discretionary clauses is not preempted by ERISA. *See*, *e.g.*, *Snyder v. Unum Life Ins. Co. of Am.*, CV 13-07522 BRO-RZX, 2014 WL 7734715, at *10 (C.D. Cal. Oct. 28, 2014). Thus, the Court concludes that *Erickson* applies to this case and the law of Texas would provide a more uniform system of determining rights under the Plan.

Finally, Flaaen argues that, if Texas law applies, the Court should decline to enforce the discretionary clause as a matter of public policy. Dkt. 16 at 12–15. "Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy . . . ." *Ito Int'l Corp. v. Prescott, Inc.*, 83 Wn. App. 282, 288 (1996) (citing *Rutter v. BX of Tri–Cities, Inc.*, 60 Wn. App. 743, 746 (1991)). Fundamental public policy is generally found in legislative enactments declaring certain types of contracts illegal. Restatement (Second) Conflict of Laws § 187 cmt. g. Specifically, "[s]tatutes involving the rights of an individual insured as against an insurance company are an example of this sort [of fundamental policy]." *Id*. The Court should also balance the state's competing policies:

> The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue.

*Id*.

In this case, the Court must balance competing interests. The interests in Principal's favor are (1) when the Plan was issued Texas allowed discretionary clauses and (2) national uniformity of determining the rights under the Plan. On December 23, 2010, however, Texas banned discretionary clauses. 28 Tex. Admin. Code § 3.1203. The legislative history of Washington's ban on such clauses states that the ban is consistent with National Association of Insurance Commissioners' endorsement of a ban on these clauses "as well as similar prohibitions adopted by other state insurance regulators." http://lawfilesext.leg.wa.gov/law/wsr/2009/07/09-07-030.htm (last visited December 21, 2016). In sum, the Court finds that the balance falls in Flaaen's favor. The national trend is to ban such clauses, and the Washington Insurance Commissioner stated that the clauses are "prohibited . . . because they unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the agreement." *Id*. The Court declines to enforce a clause that is unreasonable and deceptive. Therefore, the Court concludes that enforcement of the discretionary clause would violate a strong public policy in Washington.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Flaaen's motion for partial summary judgment (Dkt. 16) is **GRANTED**. The Court will conduct a *de novo* review of Flaaen's benefits.

Dated this 22nd day of December, 2016.

BENJAMIN H. SETTLE
United States District Judge