UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY R. FLAAEN,

               Plaintiff,

   v.

PRINCIPAL LIFE INSURANCE
COMPANY,

               Defendant.

CASE NO. C15-5899 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR AN
AWARD OF ATTORNEY'S FEES

This matter comes before the Court on Plaintiff Anthony Flaaen's ("Flaaen")

motion for an award of attorney's fees (Dkt. 51). The Court has considered the pleadings

filed in support of and in opposition to the motion and the remainder of the file and

hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 10, 2015, Flaaen filed a complaint for long-term disability benefits

against Defendants McLane Company, Inc. ("McLane") and Principal Life Insurance

Company, Inc. ("Principal"). Dkt. 1. Flaaen's sole claim was wrongful denial of benefits

under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). *Id.* On February 1, 2016, Flaaen dismissed McLane. Dkt. 6.

On June 22, 2016, Flaaen filed a motion for partial summary judgment arguing that the applicable long-term disability plan's ("LTD") discretionary clause is invalid and unenforceable as a matter of law. Dkt. 16. On December 22, 2016, the Court granted the motion and determined that the standard of review was *de novo*. Dkt. 28.

On May 31, 2017, the parties filed opening briefs for the bench trial. Dkts. 33, 34. On June 16, 2017, the parties responded. Dkts. 36, 37. On June 30, 2017, the parties replied. Dkts. 39, 40. On July 20, 2017, the Court held a one-day bench trial. Dkt. 41. On August 9, 2017, the Court requested supplemental briefing. Dkt. 42. On August 18, 2017, the parties submitted additional responses. Dkts. 43, 44. On August 25, 2017, the parties submitted additional replies. Dkts. 46, 47. On September 27, 2017, the Court ruled in favor of Flaaen. Dkt. 48.

On November 6, 2017, Flaaen filed a motion for attorney's fees. Dkt. 51. On November 20, 2017, Principal responded. Dkt. 53. On November 21, 2017, Flaaen replied. Dkt. 54.

## II. DISCUSSION

### A. Fee Award

Under ERISA's civil enforcement provision, 29 U.S.C. § 1132 (g)(1), courts have discretion to award reasonable attorneys' fees and costs, where a party has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256 (2010). In this case, it is undisputed that Flaaen was successful on the

merits.  Dkt. 53 at 4 ("Principal Life acknowledges [the ruling in favor of Flaaen] is likely 'some success on the merits'").  Once a court determines that a litigant has achieved "some degree of success on the merits," the court must determine whether the five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), weigh in favor of awarding that litigant fees and costs.  *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (quoting 29 U.S.C. § 1132(g)(1)).  The *Hummell* factors are as follows:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453.

When applying the *Hummell* factors, courts "must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999)(internal quotations and citation omitted).  Further, "no single *Hummell* factor is necessarily decisive." *Simonia*, at 1122.  Principal also notes that sometimes courts deny an award of fees when "special circumstances would render such an award unjust." *McElwaine*, 176 F.3d at 1172.

### 1.    Culpability or Bad Faith

Flaaen argues that this factor weighs in favor of an award of fees.  While Flaaen fails to show that Principal acted in bad faith, Flaaen presents a persuasive argument that

Principal was culpable. Neither party cited Ninth Circuit authority elaborating on the issue of "culpable conduct," but Principal cited district courts in the Second Circuit for the proposition that a "party is only culpable when its conduct is intentional, blameworthy, and results in the breach of a legal duty." *See*, *e.g.*, *Perreca v. Gluck*, 2004 WL 2793270, at *3 (S.D.N.Y. Dec. 6, 2004). Moreover, the factor requires "conduct [that] normally involves something more than simple negligence . . . . [It] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." *Algie v. RCA Communications, Inc.*, 891 F.Supp. 875, 891 (S.D.N.Y. 1994).

Under this standard, Principal argues that its actions do not constitute culpable conduct. The Court disagrees. The Court found that Principal at least failed to address and at most ignored Flaaen's evidence during the processing of Flaaen's claims. Dkt. 48 at 16–20. Principal continues this tactic in its current response by basing argument on information obtained from Flaaen's social media profiles instead of actual evidence such as Flaaen's declarations. Dkt. 53 at 6. This conduct was wrong earlier, and it is wrong now. Moreover, the Court found that Principal repeatedly based its decisions on new occupations that it considered qualifying gainful employment for Flaaen. In one instance, Principal's claim manager based the denial on Flaaen's claim on a determination that Flaaen qualified for the position of fleet manager without any underlying evidence to support Flaaen's qualification for this position. Dkt. 48 at 16–17. The Court concludes that this conduct is more than simple negligence. Therefore, the Court finds that this factor weighs in favor of an award because Principal's conduct was culpable.

### 2. Ability to Satisfy Award

It is undisputed that Principal has the ability to satisfy an award. The Court, however, finds that this factor is at most neutral. Awarding fees because an entity is financially successful is the least persuasive reason the Court is required to consider.

### 3. Deterrence

Under this factor, Principal argues that "ERISA plan fiduciaries should not be deterred from defending against claims they legitimately believe are precluded from coverage." Dkt. 53 at 9. The Court agrees, but Principal fails to recognize all of the circumstances in this proceeding. Principal relied in part on the proposition that a beneficiary could be considered gainfully employed if, at some point in the future, he was able to secure an income that would be greater than his monthly benefits under the ERISA plan. Dkt. 45 at 10 (citing *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357 (7th Cir. 2017)). If rejection of this proposition was the sole issue in this case, there would be little need to deter future conduct. This matter, however, also involved issues of Principal's erroneous review of Flaaen's evidence and somewhat baseless denials of his claims. Moreover, another court has recently found that "[a]n award of fees [against Principal] may deter other providers from failing to consider evidence submitted by their beneficiaries that supports the continuation of benefits." *Paulson v. Principal Life Insurance Company*, No. C16-5268RJB (W.D. Wash. Oct. 26, 2017) ("*Paulson*"). To the extent that Principal has repeatedly ignored evidence submitted by beneficiaries, the conduct should be deterred. Therefore, the Court finds that this factor weighs in favor of an award.

### 4. All Beneficiaries or Significant Legal Question

The fourth *Hummell* factor is "whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." *Hummell*, 634 F.2d at 453. Although it is debatable whether Flaaen sought to benefit others, it is undisputed that this matter resolved the significant legal question regarding the standard of review in Washington. Dkt. 28. Therefore, the Court concludes that this factor weighs in favor of an award.

### 5. Relative Merits

The fifth *Hummell* factor is "the relative merits of the parties' positions." *Hummell*, 634 F.2d at 453. Although the Court found significant issues with Principal's positions under *de novo* review, Principal asserted relatively stronger positions under the contract's arbitrary and capricious standard of review. *See*, *e.g.*, *Geiger*, 845 F.3d 357. In other words, Principal's initial positions appeared strong, but steadily weakened as the matter proceeded. Thus, the Court finds that this factor is neutral to slightly in favor of Flaaen.

### 6. Special Circumstances

"[A]bsent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984).

In this case, Principal argues that special circumstances warrant a denial of Flaaen's request for fees. Principal, however, fails to cite any authority for the proposition that the facts of this case amount to special circumstances. Instead, Principal

simply argues that awarding fees in this case would incentivize beneficiaries to forgo gainful employment and sue to maintain benefits. Dkt. 53 at 5. While such circumstances are possible, Principal has failed to show that they are probable. Moreover, if the record reflects that a beneficiary is voluntarily forgoing gainful employment, then it is unlikely that the beneficiary would prevail on the merits of an ERISA claim. Therefore, the Court does not find that special circumstances exist to deny fees.

### 7. Award Summary

Under the *Hummell* factors, the Court concludes that Flaaen is entitled to an award of attorney's fees. Three of the factors weigh in favor of an award and the other two are neutral. Therefore, the Court grants Flaaen's motion as to an award. The next issue is whether the requested fees are reasonable.

## B. Fee Calculation

"The Ninth Circuit adopts the hybrid lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983), to determine the proper amount of attorney's fees awards in ERISA actions." *Arnett v. Hartford Life & Acc. Ins. Co.*, 558 F. Supp. 2d 975, 980–81 (C.D. Cal. 2007) (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)). The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995). The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the

accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id*.

In this case, Principal challenges Flaaen's attorney's rates and the hours expended.

## 1. Rates

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

In this case, Principal objects to the hourly rates requested by Flaaen's attorneys. The requested hourly rates are as follows: $500 for lead attorney Chris Roy, $450 for attorney Darrin Class, and $185 for paralegal Danielle Barber. Flaaen argues that another judge in this district recently found that these rates were reasonable in the community. Dkt. 51 at 6 (citing *Paulson*). Principal fails to produce any evidence to undermine this finding and relies on similar arguments that were rejected in *Paulson*. Therefore, the Court finds that Flaaen's requested rates are reasonable.

## 2. Hours

"A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen*, 214 F.3d at 1045 (quoting *Hensley*, 461 U.S. at 433).

In this case, the parties dispute the reasonableness of the hours worked. On one hand, Flaaen cites authority for the proposition that "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the

case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court agrees that it is difficult to second guess the number of hours spent on a case when the attorney is unlikely to receive any compensation for his time if the Court ruled in favor of Principal. On the other hand, Principal details some questionable hour entries as follows:

> While Plaintiff explains his counsel's hours by indicating that Mr. Roy prepared the complaint, reviewed the administrative record, reviewed dispositive motion drafts and pleadings and prepared this motion, it should be noted that the complaint contained a total of 24 allegations, the drafting of which took Plaintiff's counsel 7.2 (!) hours. It thereafter took Plaintiff's counsel another 18 minutes to review the complaint once it was filed. [DE #51-1, p. 20]
>
> Plaintiff's counsel further claims that the excessive nature of the fees incurred are a result of him having to argue the standard of review in a partial motion for summary judgment due to Principal Life's "refusal" to stipulate to *de novo* review. As it was an issue of first impression for this Court whether a *de novo* standard of review applies in a case when the underlying group insurance policy was issued and delivered in another state and contains an express discretionary clause, such as here, Principal Life's desire to brief the issue – and to preserve its arguments for an appeal – rather than stipulating to a standard of review case law did not mandate, Plaintiff's argument goes nowhere. Moreover, whether or not Principal Life "refused" to give in to Plaintiff's request certainly does not justify a total of 35.0 hours of legal research in connection with Plaintiff's opening brief, predominantly impermissibly block billed (plan document research 7.2 hours, Texas discretionary ban research 3.3 hours, choice of law research 8.1 hours, public policy research 3.1 hours, legal research on *Hirschkron v. PLIC* 8.0 hours and further choice of law research 5.3 hours) and another 18.0 hours in drafting the 15 page brief. [DE# 51-1, p. 21] It then took Plaintiff's counsel an incredible 3.3 hours to review Principal Life's 17 page response brief (that is a speed of one page every 11.6 minutes.) [Id.]
>
> True to form, Plaintiff's counsel subsequently spent another 13.4 hours researching Washington law and the incorporation of policy documents into the plan, and 11.4 hours drafting an 11 page reply brief. [Id.] Plaintiff's counsel spent an additional 25.1 hours on the opening supplemental brief (including 3.4 hours "retooling" a previous draft), 3.5 hours reviewing Principal Life's 10 page supplemental brief, and then another 12.5 hours on the final brief. [DE# 51-1, p. 22] All in all, the

briefing of Plaintiff's motion for partial summary judgment took Plaintiff about 122.2 hours, an equivalent of 3 weeks working 40 hours a week – and equal to the total number of hours counsel for Principal Life spent on the entire matter, including traveling to Tacoma, Washington, for the hearing on the parties' cross-motions for judgment. One would think that attorneys charging at hourly rates of $500.00 and $450.00 would have found a way to engage in a more efficient drafting effort and did not have to spend an entire business day researching a single ruling.

The excessive amount of time spent on this matter continues, however, with 162.9 hours spent by Plaintiff's counsel on briefing his motion for judgment, split up as follows: 68.8 hours of research and drafting of Plaintiff's opening brief for judgment, 3.0 hours reviewing Principal Life's brief, 12.7 hours preparing the response brief, 8.1 hours (!) -- or one entire business day -- reviewing Principal Life's response brief, 16.0 hours preparing the reply brief (almost an hour of which was devoted to reviewing the Department of Labor regulations which play no role in this case), 2.4 hours reviewing Principal Life's reply brief and subsequently another 49.1 hours on the two supplemental briefs and 2.8 hours reviewing Principal Life's briefs. Plaintiff's counsel's time spent on briefing the motion for judgment is equivalent to 4 weeks working 40 hours a week and exceeds the total amount of hours spent by counsel for Principal Life on the entire matter by over 40 hours (or an entire week) – including client reporting and traveling to Tacoma, Washington. Finally, Plaintiff's counsel spends 17.1 hours on his almost 9 page fee motion (which is largely identical to the motion Plaintiff's counsel filed recently in the *Paulson* matter.)

Dkt. 53 at 17–20.

The Court agrees with the majority of Principal's points. For example, it seems unreasonably excessive to spend four full weeks on the final motion for judgment, spend three full weeks on the motion for partial summary judgment, or spend seventeen hours on an almost identical nine page fee petition. Moreover, Flaaen fails to explain why this case required almost 300 hours of work whereas the similar *Paulson* matter required less than 80 hours for the same successful result on similar alleged errors by Principal. To the extent that this matter involved litigating the standard of review, the Court finds that the

reasonable additional hours would at most be twice what was requested in *Paulson*. It is also true that the Court requested some additional briefing in this matter increasing the reasonable number of hours expended. Recognizing that reducing hours in hindsight based on reasonableness is more of an art than a science, the Court finds that Mr. Roy's hours should be reduced by one third, which results in 200 reasonable hours of work. This is two and a half times what was awarded in *Paulson* and should adequately compensate Mr. Roy while declining to award compensation for excessive or otherwise unnecessary hours.

Regarding the hours requested for Mr. Class and Ms. Barber, the Court finds that Principal has failed to show that these hours are excessive or unreasonable. The requested hours are also consistent with those expended in *Paulson*. Therefore, the Court grants Flaaen's request on these hours.

**3.    Calculation Summary**

In conclusion, the Court grants the requested hourly rates and the majority of the requested hours as follows:

| Mr. Roy | 200 hours | x | $500 per hour | = $ 100,000 |
| Mr. Class | 82.3 hours | x | $450 per hour | = $ 37,035 |
| Ms. Barber | 1.4 hours | x | $185 per hour | = $ 259 |
| | | | Total | = $137,294 |

### III.  ORDER

Therefore, it is hereby **ORDERED** that Flaaen's motion for an award of attorney's fees (Dkt. 51) is **GRANTED in part** and **DENIED in part** and Flaaen is awarded $137,294 in fees.

Dated this 21st day of December, 2017.


---
BENJAMIN H. SETTLE
United States District Judge